1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LAW OFFICE OF**
**BENJAMIN MAINZER, A.P.C**.
Benjamin Mainzer (CSB 257748)
305 K Street
Eureka, CA 95501
(707) 234-5171
bmainzer@mainzerlaw.com

Attorney for DARRIN DICKSON

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

DARRIN DICKSON

        Plaintiff,

v.

COUNTY OF HUMBOLDT, RYAN
CAMPADONIA; and DOES 1 through 40
inclusive,

        Defendants.

_____/

CASE NO.  1:24-cv-07573

**COMPLAINT FOR DAMAGES AND**
**INJUNCTIVE RELIEF**

DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff DARRIN DICKSON, for his complaint against Defendants

HUMBOLDT COUNTY, RYAN CAMPADONIA, and DOES 1-40, inclusive, alleges as

follows:

## INTRODUCTION

1.      This action seeks compensatory damages, punitive damages and injunctive

relief, from Defendants for violating various rights under the United States Constitution and

state law in connection with the arrest of Plaintiff Darrin Dickson.

2.      As alleged herein, beginning seconds after making what should have been an

ordinary traffic stop, and with no good cause, Deputy Ryan Campadonia repeatedly

employed excessive force on the person of Plaintiff, even though Plaintiff posed no threat to

Deputy Campadonia or anyone else.   After affecting an unnecessary arrest, Deputy Campadonia then retaliated against Plaintiff by impounding his vehicle even though doing so was not required.  The aforementioned conduct was tortious, violative of Plaintiff's rights under the Constitutions of the United States and State of California and caused injury to Plaintiff.

## PARTIES

3.      At all relevant times, Plaintiff Darrin Dickson, hereinafter DICKSON, was an individual residing in the County of Humboldt, California.

4.      At all relevant times, the Humboldt County Sheriff's Office was a department or agency of Defendant COUNTY OF HUMBOLDT, California.

5.      COUNTY OF HUMBOLDT is a public entity as defined by California Government Code section 811.2.

6.      Defendant RYAN CAMPADONIA, hereinafter, CAMPADONIA, at all times herein mentioned was a public employee of COUNTY OF HUMBOLDT, to wit a deputy sheriff, as defined by California Government Code section 811.4.

7.      At all times herein mentioned, Deputy CAMPADONIA was the employee of COUNTY OF HUMBOLDT.

8.      In doing the things alleged herein, Deputy CAMPADONIA was acting within the course and scope of this employment and was acting with the consent, permission and authorization of COUNTY OF HUMBOLDT.

9.      Plaintiffs are ignorant of the true names or capacities of the Defendants sued herein under the fictitious names Doe 1 through Doe 40, inclusive. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.

10.    Plaintiffs are informed and believe that each of the Doe Defendants was responsible in some manner for the occurrences and injuries alleged in this complaint. At all times herein mentioned, Doe Defendants 1 through 40 were California residents.

11.    At all relevant times, DOES 1-20 were the employees or agents of COUNTY OF HUMBOLDT and at all relevant times were acting within the course and scope of their employment.

12.    DOES 1-20 had knowledge of the acts, conduct and operative information available to Defendants.

13.    At all relevant times, DOES 21-40 were the employees or agents of COUNTY OF HUMBOLDT and at all relevant times were acting within the course and scope of their employment.

14.    DOES 21-40 had at all relevant times the authority to create, change or modify the training, instruction, policies, departmental practices, standard operating procedures and customs of COUNTY OF HUMBOLDT Sheriff deputies and the ability to approve or ratify the conduct of COUNTY OF HUMBOLDT Sheriff deputies.

## **JURISDICTION**

15.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 based on questions of federal constitutional law and 42 U.S.C. § 1983.

16.    This Court has jurisdiction to issue declaratory or injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57.

17.     This Court has jurisdiction over claims arising under the laws of the State of California pursuant to the supplemental jurisdiction provided by 28 U.S.C. § 1367(a).

18.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391 because all of the events giving rise to the claims herein occurred in the Northern District of California.

19.     As a condition precedent to filing state causes of action, on March 19, 2024, DICKSON served his claims for damages with COUNTY OF HUMBOLDT pursuant to applicable sections of the California Government Code.

20.     On May 2, 2024, COUNTY OF HUMBOLDT rejected his claim.

## DIVISION

21.     Division assignment is proper for Eureka, as all of the conduct alleged herein occurred within the County of Humboldt.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

22.     On or about September 26, 2023, at or around 7:20 pm, COUNTY OF HUMBOLDT Deputy Sheriff Ryan CAMPADONIA initiated a traffic stop on a vehicle owned and operated by DICKSON.

23.     The stop occurred in the immediate vicinity of Redwood Drive and Sprowl Creek Road in Garberville, California.  Allegedly, Deputy CAMPADONIA observed DICKSON run a stop sign and accelerate at an unsafe rate of speed.

24.     At the time of the traffic stop, the vehicle operated by DICKSON was legally owned and registered to him.

1    25.    There was no delay by DICKSON in stopping.  DICKSON quickly pulled

2    over and parked his vehicle in a safe location.

3    26.    Prior to being pulled over on September 26, 2023, DICKSON was known to

4    Deputy CAMPADONIA.  Indeed, Deputy CAMPADONIA had interacted with DICKSON at

5    least two times previously without incident.

6    27.    During prior interactions between DICKSON and Deputy CAMPADONIA,

7    DICKSON had always been peaceful.  None of CAMPADONIA's prior contacts with

8    DICKSON culminated with any arrest.

9

10    28.    On information and belief, at all relevant times, at all relevant times, Deputy

11    CAMPADONIA did not believe DICKSON had any criminal record.

12    29.    Notwithstanding his prior peaceful contacts with DICKSON, Deputy

13    CAMPADONIA viewed DICKSON negatively and considered him "uncooperative."

14    30.    The reason why Deputy CAMPADONIA viewed DICKSON as uncooperative

15    was because on prior contacts, DICKSON had elected not to answer questions

16    CAMPADONIA posed to him.

17

18    31.    Deputy CAMPADONIA had a negative opinion of DICKSON because

19    DICKSON had previously chosen to exercise his rights afforded to him under the United

20    States Constitution and Constitution of the State of California not to speak with him.

21    32.    When on September 26, 2023, Deputy CAMPADONIA first approached the

22    vehicle, DICKSON was sitting calmly in the driver seat.  The vehicle was turned off, and the

23    driver's window was rolled down a sufficient amount for DICKSON to be clearly heard by

24    CAMPADONIA.

25

26

27

28

33.    At the time Deputy CAMPADONIA approached the vehicle, the condition of the vehicle windows was such that both DICKSON and the interior of the vehicle cabin were clearly visible to Deputy CAMPADONIA.

34.    At the time Deputy CAMPADONIA approached the vehicle, it was plain that nobody else was inside the vehicle other than DICKSON.

35.    At or around the time when Deputy CAMPADONIA approached the vehicle, a second COUNTY OF HUMBOLDT deputy sheriff, Julian Aguilera, arrived.

36.    At all relevant times, Deputy Aguilera was close enough such that he was able to observe the interactions between Deputy CAMPADONIA and DICKSON.

37.    At this time, both based on his prior interactions with DICKSON and DICKSON's behavior on that date, CAMPADONIA had no reason to believe that DICKSON was armed, violent, or posed any imminent danger to anyone.

38.    Despite his compliance with the stop, immediately upon approaching DICKSON's vehicle, Deputy CAMPADONIA asked DICKSON to open his door or roll down his window.

39.    DICKSON promptly responded to this request by stating he could hear Deputy CAMPADONIA "just fine."

40.    At this time, DICKSON's voice was loud enough such that Deputy CAMPADONIA could hear him.

41.    Deputy CAMPADONIA however then began to curse at DICKSON.  The cursing began only 10 seconds after first making with DICKSON.

42.    Deputy CAMPADONIA yelled at DICKSON to "Open the fucking door!" DICKSON responded again that he could hear Deputy CAMPADONIA "just fine."

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

43.    There was no credible officer safety reason for DICKSON to open his door or alight from his vehicle.  Nor was there any reason for Deputy CAMPADONIA to aggressively curse at DICKSON.

44.    At the time, DICKSON was unclear of the reason for the request and why Deputy CAMPADONIA's tone was so hostile.

45.    Given his hostility, DICKSON asked Deputy CAMPADONIA why he was being asked to get out of his vehicle.

46.    In response to this question, Deputy CAMPADONIA, for the first time, ordered DICKSON out of the vehicle—even though there was still no officer safety reason for DICKSON to exit the vehicle.

47.    About 10 seconds after first issuing this command, Deputy CAMPADONIA deployed his extendable baton and smashed the driver's side window of DICKSON's vehicle.

48.    The entire preceding contact as documented on Deputy CAMPADONIA's body worn camera was less than 30 seconds.

49.    Deputy CAMPADONIA's baton struck DICKSON in the forehead causing a bleeding contusion.

50.    Glass from the shattered window hit DICKSON's face and got in his right eye causing a corneal abrasion and other bleeding cuts on his face and scalp.

51.    There was no reason for Deputy CAMPADONIA to have deployed his baton at that time.

52.    Deputy Aguileria, who was standing nearby did not think that there was a reason for Deputy CAMPADONIA to deploy his baton.

53.    At the time of the baton strike, Deputy Aguilera was attempting to get the attention of Deputy CAMPADONIA to calm him down and get him to put his baton away.

54.    The aforementioned conduct by Deputy CAMPADONIA was violative of COUNTY OF HUMBOLDT Sherrif's Department policy 303.5 in that Deputy CAMPADONIA failed to weigh the need to immediately control a suspect against the risk of causing serious injury.

55.    Instead of listening to Deputy Aguilera, seconds later, Deputy CAMPADONIA continued to escalate the encounter.

56.    Deputy CAMPADONIA yelled at DICKSON, "do you want to get fucking tased?"

57.    Deputy CAMPADONIA then drew his taser and pointed his taser at the chest of DICKSON.

58.    In response to seeing Deputy CAMPADONIA draw his taser, Deputy Aguilera used his hand to physically push the taser that Deputy CAMPADONIA was pointing at DICKSON away from DICKSON.

59.    Deputy Aguilera did not believe there was any reason for Deputy CAMPADONIA to have drawn his taser, point it at DICKSON and threaten to tase him.

60.    At this time, Deputy Aguilera believed DICKSON could be talked out of the vehicle.

61.    Deputy Aguilera continued to try to deescalate despite Deputy CAMPADONIA's unreasonable aggressive conduct.

62.    In doing the aforementioned, Deputy CAMPADONIA's use of force was excessive and contrary to what a reasonable officer would deem appropriate to employ.

63.     The aforementioned conduct by Deputy CAMPADONIA was additionally violative of Department policies regarding taser use including 304.5.1 and 304.5.3.

64.     Deputy CAMPADONIA continued to escalate the encounter despite no officer safety reason for him to do so.

65.     Deputy CAMPADONIA reached into the vehicle and grabbed at DICKSON.

66.     Deputy CAMPADONIA grabbed DICKSON momentarily by the throat, contrary to Department policy 300.3.7.

67.     DICKSON yelled at Deputy CAMPADONIA to get his hands off of his neck.

68.     While DICKSON attempted to get Deputy CAMPADONIA's hands off of him, Deputy CAMPADONIA struck DICKSON in the face with his elbow.

69.     At no time during the entire encounter did DICKSON ever attempt to strike or injure anyone.  Instead, DICKSON used the minimal amount of force necessary to prevent further injury to his person.

70.     At or around this general time, multiple officers from the California Highway Patrol arrived. These officers attempted to calmly speak to DICKSON, but Deputy CAMPADONIA continued to yell and curse at DICKSON thwarting their efforts to deescalate the conflict that Deputy CAMPADONIA had created.

71.     DICKSON told these officers that he feared for his life.

72.     After being assured by officers from the California Highway Patrol that he would not be harmed, DICKSON voluntarily exited his vehicle and was placed under arrest by Deputy CAMPADONIA without incident pursuant to California Penal Code section 148(a)(1).

73.     DICKSON was later charged by the COUNTY OF HUMBOLDT District Attorney with violating California Penal Code section 69.

74.     On or about May 13, 2024, all charges related to any unlawful resisting, obstructing or delaying a peace officer, or resisting an executive officer against DICKSON were dismissed on motion of the District Attorney.

75.     After DICKSON was arrested but still on scene, CAMPADONIA asked DICKSON what DICKSON wanted done with his vehicle.

76.     DICKSON asked Deputy CAMPADONIA if he could leave his vehicle where it was parked.

77.     Deputy CAMPADONIA remarked that the vehicle was legally parked told DICKSON that he could.

78.     However, in retaliation for what Deputy CAMPADONIA perceived as his earlier noncompliance, Deputy CAMPADONIA intentionally acted contrary to DICKSON's wishes and had DICKSON's vehicle towed and impounded in contravention to Department policy 502.2.3.

79.     Deputy CAMPADONIA knew or had reason to know that DICKSON lived in his vehicle and knew or had reason to know that by towing and impounding the vehicle, he was taking away his only shelter.

80.     This conduct by Deputy CAMPADONIA was punitive and intended to punish DICKSON for exercising his rights.

81.     Indeed, the escalation of the encounter was because Deputy CAMPADONIA resented DICKSON based on what Deputy CAMPADONIA perceived as prior "uncooperative" conduct when in fact, DICKSON was always peaceful and merely asserted his constitutional rights.

82.     Furthermore, Deputy CAMPADONIA admitted that he had no articulable concern about DICKSON being armed, nor belief that he was a danger.  His only claim was

that he knew DICKSON was transient and people who are transient are sometimes armed

with knives.

83.    On information and belief, the aforementioned conduct by Deputy

CAMPADONIA was reviewed as part of a use of force investigation conducted by the

COUNTY OF HUMBOLDT Sherrif's Department members sergeant Brian Taylor and

lieutenant Brian Quenell at the direction of Sheriff William Honsal.

84.    The investigation by the COUNTY OF HUMBOLDT Sherrif's Department

concluded that Deputy CAMPADONIA's conduct was "in policy."

**FIRST CLAIM FOR RELIEF**
**Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)**
**(By Plaintiff against Defendant CAMPADONIA and Does 1-20)**

85.    Plaintiffs repeat and reallege each and every allegation in the preceding

paragraphs as if stated fully herein.

86.    Defendant CAMPADONIA breaking the window of DICKSON's vehicle

with his baton and striking DICKSON deprived DICKSON of his right to be secure in his

persons against unreasonable searches and seizures as guaranteed to DICKSON under the

Fourth Amendment to the United States Constitution and applied to state actors by the

Fourteenth Amendment.

87.    This unreasonable use of force by Defendants CAMPADONIA deprived

DICKSON of his right to be secure in his person against unreasonable searches and seizures

as guaranteed to DICKSON under the Fourth Amendment to the United States Constitution

and applied to state actors by the Fourteenth Amendment.

88.    As a result, DICKSON experienced mental and physical pain and suffering.

89.    The conduct of CAMPADONIA was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DICKSON and therefore warrants the imposition of exemplary and punitive damages as to Defendant CAMPADONIA

90.    Plaintiffs also seek attorney fees under this claim.

**SECOND CLAIM FOR RELIEF**
**Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)**
**(By Plaintiff against Defendant CAMPADONIA and Does 1-20)**

91.    Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs as if stated fully herein.

92.    Defendant CAMPADONIA brandishing his taser at DICKSON and threating to taze him deprived DICKSON of his right to be secure in his persons against unreasonable searches and seizures as guaranteed to DICKSON under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

93.    This unreasonable use of force by Defendants CAMPADONIA deprived DICKSON of his right to be secure in his person against unreasonable searches and seizures as guaranteed to DICKSON under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

94.    As a result, DICKSON experienced mental and physical pain and suffering.

95.    The conduct of CAMPADONIA was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DICKSON and therefore warrants the imposition of exemplary and punitive damages as to Defendant CAMPADONIA

96.    Plaintiffs also seek attorney fees under this claim.

**THIRD CLAIM FOR RELIEF**
**Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)**
**(By Plaintiff against Defendant CAMPADONIA and Does 1-20)**

97.    Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs as if stated fully herein.

98.    Defendant CAMPADONIA grabbing DICKSON by his throat and striking him with his elbow deprived DICKSON of his right to be secure in his persons against unreasonable searches and seizures as guaranteed to DICKSON under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

99.    This unreasonable use of force by Defendants CAMPADONIA deprived DICKSON of his right to be secure in his person against unreasonable searches and seizures as guaranteed to DICKSON under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

100.    As a result, DICKSON experienced mental and physical pain and suffering.

101.    The conduct of CAMPADONIA was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DICKSON and therefore warrants the imposition of exemplary and punitive damages as to Defendant CAMPADONIA

102.    Plaintiff also seeks attorney fees under this claim.

## FOURTH CLAIM FOR RELIEF
### Substantive Due Process (42 U.S.C. § 1983)
### (By Plaintiff against Defendant CAMPADONIA and Does 1-20)

103.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if stated fully herein.

104.    DICKSON had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive him of life, liberty, or property in such a manner as to shock the conscience,

including but not limited to, unwarranted state interference in seizing DICKSON'S

residence, i.e., his vehicle.

105.    As a direct and proximate cause of the acts of Defendant CAMPADONIA and

DOES 1-20, DICKSON suffered mental anguish.

106.    Defendant CAMPADONIA and DOES 1-20 are liable for DICKSON'S

injuries because Defendant CAMPADONIA and DOES 1-20 were integral participants in the

denial of due process.

107.    The conduct of Defendant CAMPADONIA and DOES 1-20 was willful,

wanton, malicious, and done with reckless disregard for the rights and safety of DICKSON

and therefore warrants the imposition of exemplary and punitive damages as to Defendants

Defendant CAMPADONIA and DOES 1-20.

108.    Plaintiff also seeks attorney fees under this claim.

### FIFTH CLAIM FOR RELIEF
**Municipal Liability for Unconstitutional Custom or Policy (42 U.S.C. § 1983)**
**(By Plaintiff against Defendants COUNTY OF HUMBOLDT and DOES 21-40)**

109.    Plaintiffs repeat and reallege each and every allegation in the preceding

paragraphs as if stated fully herein.

110.    Defendants COUNTY OF HUMBOLDT and DOES 21-40 deprived

DICKSON of the rights and liberties secured to him by the Fourth and Fourteenth

Amendments to the United States Constitution, in that said Defendants and their supervising

and managerial employees, agents, and representatives acting with reckless and deliberate

indifference to the rights and liberties of the public in general, and of DICKSON specifically,

knowingly maintained, enforced and applied an official recognized custom, policy, and

practice of:

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**                    **PAGE 14**

    a.   Permitting excessive use of force by deputies;

    b.   Employing and retaining CAMPADONIA whom COUNTY OF HUMBOLDT and DOES 21-40, at all times material herein knew or reasonably should have known had dangerous propensities for abusing his authority and for mistreating citizens by failing to follow written Department policies including, but not limited to 303.5, 304.5.1, 304.5.3, 300.3.7 and 502.2.3;

    c.   Inadequately supervising, training, controlling, assigning, and disciplining CAMPADONIA whom COUNTY OF HUMBOLDT and DOES 21-40 knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

    d.   Failing to adequately train officers, including CAMPADONIA, and failing to institute appropriate policies, regarding the use of excessive force;

    e.   Having and maintaining an unconstitutional policy, custom, and practice of using excessive force, which also is demonstrated by inadequate training

    f.   Ratifying the conduct of CAMPADONIA as part of the use of force investigation;

111.    By reason of the aforementioned policies and practices of COUNTY OF HUMBOLDT and DOES 21-40, DICKSON was injured.

112.    Defendants COUNTY OF HUMBOLDT and DOES 21-40, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendants also acted with

deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of DICKSON.

113.    By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, Defendants COUNTY OF HUMBOLDT and DOES 21-40, acted with an intentional, reckless, and callous disregard for the welfare of DICKSON.

114.    Defendants COUNTY OF HUMBOLDT and DOES 21-40, each of their actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

115.    Furthermore, the policies, practices, and customs implemented and maintained and still tolerated by Defendants COUNTY OF HUMBOLDT and DOES 21-40, were affirmatively linked to and were a significantly influential force behind the injuries of DICKSON.

116.    Plaintiff also seeks attorney fees under this claim.

**SIXTH CLAIM FOR RELIEF**
**Municipal Liability – Failure to Train (42 U.S.C. § 1983)**
**(By Plaintiff against Defendants COUNTY OF HUMBOLDT and DOES 21-40)**

117.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if stated fully herein.

118.    While acting under the color of state law and within the course and scope of their employment, Defendant CAMPADONIA deprived DICKSON of his rights and liberties secured to him by the Fourth and Fourteenth Amendments, including his right to be free from unreasonable search and seizure.

119.    The training policies of the Defendants COUNTY OF HUMBOLDT and DOES 21-40 were not adequate to train its deputies, including but not limited to,

CAMPADONIA, with regards to using force and use of de-escalation tactics. As a result, CAMPADONIA was not able to handle the usual and recurring situations with which he must deal, including making contact with unarmed individuals during an ordinary traffic stop.

120.     These inadequate training policies existed prior to the date of this incident and continue to this day.

121.     Defendants COUNTY OF HUMBOLDT and DOES 21-40 were deliberately indifferent to the known or obvious consequences of their failure to train deputies, including CAMPADONIA, adequately with regards to using force and employment of de-escalation tactics.

122.     The failure of Defendants COUNTY OF HUMBOLDT and DOES 21-40 to provide adequate training caused the deprivation of DICKSON'S rights by CAMPADONIA. In other words, the Defendant's failure to train is so closely related to the deprivation of the DICKSON'S rights as to be the moving force that caused the ultimate injury.

123.     By failing to provide adequate training to CAMPADONIA, Defendants COUNTY OF HUMBOLDT and DOES 21-40 acted with an intentional, reckless, and callous disregard for the welfare of DICKSON and DICKSON'S constitutional rights.

124.     Defendants COUNTY OF HUMBOLDT and DOES 21-40, each of their actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

125.     By reason of the aforementioned acts and omissions of Defendants COUNTY OF HUMBOLDT and DOES 21-40, DICKSON sustained injury.

126.     Plaintiff also seeks attorney fees under this claim.

## SEVENTH CLAIM FOR RELIEF

**Battery (Cal. Govt. Code § 820 and California Common Law)**
**(By Plaintiff against all Defendants)**

127.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if stated fully herein.

128.    Defendant CAMPADONIA, while working as a deputy for Defendant COUNTY OF HUMBOLDT, engaged in unwanted contact with DICKSON'S PERSON and caused injury to DICKSON by a baton strike, by grabbing DICKSON'S neck and by striking DICKSON with his elbow.

129.    DICKSON did not consent to the contact.

130.    The use of force was unreasonable.

131.    As a result of the actions of Defendant CAMPADONIA, DICKSON sustained injury.

132.    The conduct of Defendant CAMPADONIA was a substantial factor in causing harm to DICKSON.

133.    Defendants COUNTY OF HUMBOLDT and DOES 21-40 are vicariously for the wrongful acts of Defendant CAMPADONIA pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

134.    The conduct of Defendant CAMPADONIA was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of DICKSON entitling DICKSON to an award of exemplary and punitive damages.

1

2

**EIGHTH CLAIM FOR RELIEF**
**Assault (Cal. Govt. Code § 820 and California Common Law)**
**(By Plaintiff against all Defendants)**

3       135.    Plaintiff repeats and realleges each and every allegation in the preceding

4    paragraphs as if stated fully herein.

5       136.    Defendant CAMPADONIA, while working as a deputy for Defendant

6    COUNTY OF HUMBOLDT, pointed his taser at DICKSON, cursed at him, and threatened

7    to taze him.

8

9       137.    The threat of force was unreasonable, and caused DICKSON to reasonably

10   apprehend that he was about to be touched in a harmful or offensive manner.

11      138.    DICKSON did not consent to the conduct of Defendant CAMPADONIA.

12      139.    The actions of Defendant CAMPADONIA put DICKSON in reasonable

13   apprehension that the harmful or offensive contact was in fact going to occur.

14      140.    As a result of the actions of Defendant CAMPADONIA, DICKSON sustained

15   injury.

16      141.    The conduct of Defendant CAMPADONIA was a substantial factor in causing

17   harm to DICKSON.

18

19      142.    Defendants COUNTY OF HUMBOLDT and DOES 21-40 are vicariously for

20   the wrongful acts of Defendant CAMPADONIA pursuant to section 815.2(a) of the

21   California Government Code, which provides that a public entity is liable for the injuries

22   caused by its employees within the scope of the employment if the employee's act would

23   subject him or her to liability.

24      143.    The conduct of Defendant CAMPADONIA was malicious, wanton,

25   oppressive, and accomplished with a conscious disregard for the rights of DICKSON

26   entitling DICKSON to an award of exemplary and punitive damages.

27

28

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**                          **PAGE 19**

**NINTH CLAIM FOR RELIEF**
**Negligence (Cal. Govt. Code § 820 and California Common Law)**
**(By Plaintiff against all Defendants)**

144.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if stated fully herein.

145.    The actions and inactions of the Defendants were negligent, including, but not limited to:

    a.    the failure by Defendants COUNTY OF HUMBOLDT and DOES 21-40 to properly and adequately train employees, including Defendant CAMPADONIA and DOES 1-20, with regards to the use of force and de-escalation tactics;

    b.    the failure of Defendant CAMPADONIA and DOES 1-20 to properly and adequately assess the need to detain, arrest, and use force, against DICKSON;

    c.    the negligent tactics and handling of the situation with DICKSON by Defendant CAMPADONIA and DOES 1-20,

    d.    the negligent arrest, and use of force against DICKSON by Defendant CAMPADONIA and DOES 1-20;

    e.    the seizing and impoundment of DICKSON'S vehicle by Defendant CAMPADONIA and DOES 1-20.

146.    As a direct and proximate result of defendants' conduct as alleged above, and other undiscovered negligent conduct, DICKSON suffered injury.

147.    Defendants COUNTY OF HUMBOLDT and DOES 21-40 are vicariously liable for the wrongful acts of Defendant CAMPADONIA and DOES 1-20 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is

liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

148.     The conduct of Defendant CAMPADONIA and DOES 1-20 was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of DICKSON entitling DICKSON to an award of exemplary and punitive damages.

**TENTH CLAIM FOR RELIEF**
**Violation of Bane Act (Cal. Civil Code § 52.1)**
**(By Plaintiff against all Defendants)**

149.     Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if stated fully herein.

150.     California Civil Code, Section 52.1 (the Bane Act), prohibits any person from interfering with another person's exercise or enjoyment of his constitutional rights by threats, intimidation, or coercion (or by the use of unconstitutionally excessive force).

151.     The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., threats, intimidation or coercion), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law.

152.     Conduct that violates the Fourth Amendment violates the California Bane Act.

153.     In doing the acts alleged herein, Defendant CAMPADONIA and DOES 1-20 deprived DICKSON of his right to be free from unreasonable searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment.

154.     As alleged herein, Defendant CAMPADONIA and DOES 1-20 unlawfully used excessive force, arrested, and impounded DICKSON'S vehicle in order to interfere with, and as retaliation for, DICKSON exercising his constitutional rights under the First and Fifth Amendments to the Constitution of the United States.

155.    The conduct by Defendant CAMPADONIA described herein related to compelling DICKSON to open his door and alight from his vehicle, which he did not want to do, was unreasonable.  While law enforcement officers may order a person to alight from their vehicle, the lawfulness of the command is contingent on a reasonable officer safety reason for doing so.

156.    Furthermore, Defendant CAMPADONIA and DOES 1-20, retaliated against DICKSON by doing the acts herein alleged because DICKSON questioned why it was necessary for him to roll down his window or open the door to his vehicle.

157.    Immediate, instantaneous compliance is not required by law.  Verbal challenges to police action are protected by the First Amendment.

158.    Speech is generally protected by the First Amendment, even if it intended to interfere with the performance of an officer's duty.

159.    California law makes clear that the fact that someone verbally challenges a police officer's authority, or is slow to comply with orders, does not mean that he or she has delayed an investigation.  If asking a question causes a delay, that delay is a lawful delay.

160.    Here, Defendant CAMPADONIA and DOES 1-20 intentionally used excessive force, arrested, detained, and impounded DICKSON'S vehicle both to compel DICKSON into alighting from his vehicle and in retaliation for DICKSON exercising his rights under the First and Fifth Amendments to the Constitution of the United States, both on September 26, 2023, and previously.

161.    Resulting from the conduct of Defendant CAMPADONIA and DOES 1-20, DICKSON was harmed.

162.    The conduct of Defendant CAMPADONIA and DOES 1-20 was a substantial factor in causing harm to DICKSON.

163.     Defendants COUNTY OF HUMBOLDT and DOES 21-40 are vicariously for the wrongful acts of Defendant CAMPADONIA and DOES 1-20 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

164.     The conduct of Defendant CAMPADONIA and DOES 1-20 was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of DICKSON entitling DICKSON to an award of exemplary and punitive damages.

## **REQUEST FOR RELIEF**

Wherefore, Plaintiff seeks judgment as follows:

165.     A preliminary and permanent injunction requiring Defendants to undergo training on de-escalation tactics and excessive force;

166.     General and compensatory damages for Plaintiff, all to be determined according to proof;

167.     Punitive damages for Plaintiff according to proof;

168.     An award of attorneys' fees as permitted by law;

169.     Costs of suit;

170.     Pre- and post-judgement interest as permitted by law;

171.     Such other and further relief as the Court may deem just and proper.

DATED:  OCTOBER 31, 2024          **LAW OFFICE OF**
                                 **BENJAMIN MAINZER, A.P.C.**


By: _____*/S/*_____
        BENJAMIN H. MAINZER
        Attorneys for Plaintiff

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**          **PAGE 23**

1

2

3

## **DEMAND FOR JURY TRIAL**

4

Plaintiff demands a trial by jury on all claims.

5

DATED:  OCTOBER 31, 2024                **LAW OFFICE OF**
                                        **BENJAMIN MAINZER, A.P.C.**

6

7

8

By: _____*/S/*_____
                     BENJAMIN H. MAINZER
                     Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28